IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

```
THE ECOLOGY CENTER, INC., and      )
NATIVE ECOSYSTEM COUNCIL,          )    CV 03-100-M-DWM
                                   )
        Plaintiffs,                )
                                   )
    vs.                            )    ORDER
                                   )
BRADLEY POWELL, Regional Forester  )
of Region One fo the U.S. Forest   )
Service; RICK PRAUSA, in his       )
official capacity as Forest        )
Supervisor for the Lewis & Clark   )
National Forest; and UNITED STATES )
FOREST SERVICE, and agency of the  )
United States Department of        )
Agriculture,                       )
                                   )
        Defendants.                )
_____)
```

## I.  Introduction and Background

This matter returns to the Court on remand following the Ninth Circuit's reversal of summary judgment granted in favor of the Forest Service.  In a memorandum decision, the Ninth Circuit held that the Forest Service failed to demonstrate that the Dry Fork Vegetation Project for the Lewis and Clark National Forest was consistent with the Forest Plan's old growth standards and goshawk monitoring requirements.

The Ninth Circuit's decision also briefly addressed the

1

question of interpretation of the term "commercial forest land" as used in the Forest Plan before concluding that this Court is the proper forum in which to consider the issue. On August 25, 2005, this Court ordered the parties to submit briefs discussing the interpretation of the term "commercial forest land" and any other issues identified in the Ninth Circuit's memorandum.[1] After considering both parties' briefs, I find that the interpretation advanced by the Forest Service during this litigation is the correct one in the sense that it is in keeping with the Forest Plan.

## II.  Analysis

**A.   The Parties' Arguments**

Plaintiff Ecology Center argues that "commercial forest land" is synonymous with "suitable forest land" as those terms are used in the Forest Plan. Under this interpretation, the Forest Service may only reduce old growth habitat levels down to

---

[1] The Court has not been entirely silent on the dispute between the parties with respect to the Forest Plan's definition of "commercial forest land." In the Order granting summary judgment in favor of the Forest Service, the Court wrote:

> There was confusion in Plaintiffs' briefs and presentation at oral argument about exactly how much old growth this standard compels, and how the Forest Service found the figures it used to demonstrate its compliance. Pl.'s Response, 6; AR A-12: III-92. Commercial lands on the LCNF make up approximately 50% of forested land on the forest, though Plaintiffs mistakenly based their argument on 14 percent. AR K-1: Appendix A, A-1, Table 1. Commercial forest land is land capable of producing crops of industrial wood. However, not all commercial forest land is, in fact, used for timber production.  In fact, most of it is not.

Order dated February 3, 2004 at p. 9.

5% in the 20% of the forest which is suitable for timber production. The Ecology Center principally relies on a Forest Service statement in response to public comments during the Forest Plan planning process in 1986. The statement by the Service, which is included in the Final Environmental Impact Statement for the Forest Plan ("FEIS statement") reads:

> The Forest timber program will develop only 20 percent of the Lewis and Clark National Forest lands. The remaining 80 percent will be managed for other purposes and allow for the natural development of old-growth stands. The Forest feels that the retention of an additional 5 percent of the 20 percent of timber developed acres when coupled with the 80 percent of nontimber developed land will provide adequate dispersion of old-growth across the Forest. The Forest feels that the 5 percent standard coupled with other old-growth areas is adequate.

The Ecology Center argues that the Court's reading of the Land Classification table in Appendix A of the Forest Plan is mistaken because it did not take into account the FEIS statement when reading the table. The Ecology Center argues that "unsuitable forest land" makes up 80% of total forest land while "suitable forest land" makes up 20% of total forest land. Though it does not actually refer to the definitions of "commercial forest land" or "suitable forest land" found in the Forest Plan, the Ecology Center argues that a plan which allows the Forest Service to reduce old growth levels to 5% on more than 20% of the forest is not consistent with the Forest Service's adopted strategy. The Ecology Center also claims that the Forest Plan "clearly provides that the standard applies to one fifth of the forest lands and not one half." The Ecology Center cites no law

3

and cites the Forest Plan only for the FEIS statement quoted above and its interpretation of the Land Classification table.

The Forest Service argues that "commercial forest land" encompasses 50% of the total forest area and that "suitable forest land" is a subset of "commercial forest land." The Forest Service cites the following provisions of the Forest Plan:

> (9) Old Growth Forest Objective - A minimum of 5 percent of the commercial forest land within a timber compartment should be maintained in an old growth forest condition. Forest Plan, AR K-1, p.2-44
>
> Commercial forest land - Forest land that is producing or is capable of producing crops of industrial wood and (a) has not been withdrawn by Congress, the Secretary, or the Chief; (b) existing technology and knowledge is available to ensure timber production without irreversible damage to soils, productivity, or watershed conditions; and (c) existing technology and knowledge, as reflected in current research and experience, provides reasonable assurance that adequate restocking can be attained within 5 years after final harvesting. Forest Plan, AR K-1, Glossary p.3-4.
>
> Suitable forest land - Forest Land (as defined in CFR 219.3) for which technology is available that will ensure timber production without irreversible resource damage to soils, productivity, or watershed conditions; for which there is reasonable assurance that such lands can be adequately restocked (as provided in CFR 291.14); and for which there is management direction that indicates that timber production is an appropriate use of the area.

The Forest Service argues that applying the Land Classification table to these definitions shows that 50% of total forest land is "commercial forest land" while 20% of total forest land is "suitable forest land." Relying on the quoted definitions, the Forest Service interprets suitable forest land as a subset of commercial forest land and states that the two are not synonymous. The Forest Service acknowledges the FEIS

4

statement, but interprets the statement as a clarification that the 5% old growth standard also applies to the 20% of suitable forest land which will be developed.  The Service disagrees with the Ecology Center's contention that the FEIS statement is a limitation that restricts application of the 5% standard to "suitable forest land."

**B.   Discussion**

"Agencies are entitled to deference to their interpretations of their own regulations, including Forest Plans."  <u>Native Ecosystems Council v. U.S. Forest Service</u>, 418 F.3d 953, 960 (9th 2005).  There is a "high degree of deference" if the interpretation is not plainly erroneous or inconsistent with the regulation.  <u>Wards Cove Packing Corp. v. Nat. Marine Fisheries Serv.</u>, 307 F.3d 1214, 1218 (9th Cir. 2002).  Here, the Forest Service correctly interprets the Forest Plan.  The definitions contained in the Forest Plan are unequivocal and compel the conclusion that "suitable forest land" is a subset of "commercial forest land."  Suitable forest land is the portion of commercial forest land managed for timber production under the Forest Plan.  Commercial forest land is that which is capable of being managed for timber production regardless of whether production takes place.  The two terms are not synonymous.

Based on these definitions, the Forest Service's reading of the Land Classification table is correct.  Commercial forest land encompasses approximately 50% of total forest land.  The Ecology Center's reading of the tables, however, is not completely wrong.

5

It is correct in noting that 20% of total forest land is suitable forest land and that 80% is unsuitable forest land. However, the Ecology Center fails to recognize that under the Forest Plan definitions, suitable forest land and commercial forest land are not the same thing.

The interpretation adopted herein is compelled by the plain language of the Forest Plan and supported by the principle that the Service is due deference in its interpretation of its own regulations. Nonetheless, the Service's inconsistency in interpreting the Forest Plan is not lost on the Court. Contrary to the Service's position, I do not see how the FEIS statement can be read to allow for application of the 5% old growth standard to more than one fifth of the total forest land. I believe that the interpretation adopted by the Service for purposes of this litigation is at odds with the interpretation advanced in the FEIS statement. It is all the more troubling that the FEIS statement was offered in response to public concerns over the degree to which old growth would be preserved under the Forest Plan.[2]

While the results in this case are arguably unfair, the Service's past inconsistency does not change the fact that its

---

[2]It is possible that the Service's FEIS statement could give rise to a NEPA claim when it is compared to the contradictory terms of the adopted Forest Plan. To the extent that the FEIS statement shows that the Service was evaluating the effects of a different plan than the one that was adopted, there is room to argue that the agency failed to take a "hard look" at the plan as it was eventually adopted. See Kleppe v. Sierra Club, 427 U.S. 390, 410 n. 21 (1976). It is likely, however, that any such claim would be time-barred under the six-year statute of limitations for claims under the Administrative Procedure Act. See 28 U.S.C. 2401(a).

6

current interpretation is legally the correct one.

### III. Conclusion

Based on the foregoing, the Court hereby finds that for purposes of this case, "commercial forest land" makes up approximately 50% of forested land on the Lewis and Clark National Forest, and that the Forest Plan's 5% old growth standard applies to all "commercial forest land."

DATED this 9th day of March, 2006.

_____
DONALD W. MOLLOY, Chief Judge
United States District Court